IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| STEVEN R. HEINRICH and ) | |
| BETH HEINRICH, ) | Case No. 08-20302 |
| ) | Chapter 7 |
| Debtors. ) | |
| _____ ) | |
| STEVEN R. HEINRICH and ) | |
| BETH HEINRICH, ) | Adversary No. 08-02029 |
| ) | |
| Plaintiff, ) | |
| ) | |
| V. ) | |
| ) | |
| NELNET et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Steven R. and Beth Heinrich ("Debtors") filed a complaint seeking a determination that their student loan debt be discharged pursuant to 11 U.S.C. § 523(a)(8) on the ground that repayment of such debt would impose upon her an undue hardship, which allegations National Education Loan Network, Inc. ("Defendant") denied. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I find that Debtors' student loan debt is not dischargeable pursuant to § 523(a)(8).

### I. FACTUAL BACKGROUND

Mr. Heinrich is 39 years old and has some college education but did not obtain a degree. He attended college part-time from 1993-2002. Mrs. Heinrich is 38 years old and also attended

college from 1991-1999 but did not obtain a degree. They obtained loans to finance their college educations and consolidated the loans approximately four years ago with Defendant. The total pay-off on the consolidated loan in January 2008 was $135,601.88 at a 5% interest rate.

Debtors have six children. Mrs. Heinrich is not employed and cares full-time for the children as well as home schools them. Their seven year old son has a heart condition and developmental delay and obtains Social Security disability benefits. Their two oldest sons both have part-time jobs. Mr. Heinrich is employed as a research maintenance technician by the University of Missouri and has been in that position for five years. He has obtained raises each year but testified he is at the top of the pay scale for that position and will not receive further raises. He also testified that he has not actively searched for a higher paying position in the last five years but that the family would not be willing to move from the area for a different job. Prior to his current job, Mr. Heinrich was employed as a bus driver and in construction.

Debtors filed a Chapter 7 bankruptcy petition on February 28, 2008, and filed this adversary proceeding seeking to discharge the consolidated student loan based on undue hardship on June 12, 2008.

## II. DISCUSSION

### A. Undue Hardship

Debtors contend that it would be an undue hardship for them to repay the remaining amount due on their student loans. Under § 523(a)(8), certain student loans are nondischargeable unless repayment of the loan would impose an undue hardship on the debtors or their dependents. The burden of establishing undue hardship, by a preponderance of the evidence, is on the debtor. *Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702, 704 (8th Cir. 1981); *Ford v. Student Loan Guarantee Found. of*

2

*Arkansas (In re Ford)*, 269 B.R. 673, 675 (B.A.P. 8th Cir. 2001).  Unfortunately, the Code contains no definition of the phrase "undue hardship" and interpretation of the concept has been left to the courts.  In this Circuit, the applicable standard is the "totality of the circumstances" test.  *Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir. 2003); *Andrews*, 661 F.2d at 704; *see also, Fahrer v. Sallie Mae Servicing Corp. (In re Fahrer)*, 308 B.R. 27, 32 (Bankr. W.D. Mo. 2004).

In applying this approach, the courts are to consider: (1) the debtor's past, current and reasonably reliable future financial resources; (2) the reasonable necessary living expenses of the debtor and the debtor's dependents; and (3) other relevant facts and circumstances unique to the particular case.  *Long*, 322 F.3d at 544; *Ford*, 269 B.R. at 676.  The principal inquiry is to determine whether "the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt – while still allowing for a minimal standard of living"; if so, the indebtedness should not be discharged.  *Long*, 322 F.3d at 554.  The Court must determine "whether there would be anything left from the debtor's estimated future income to enable the debtor to make some payment on her student loan without reducing what the debtor and her dependents need to maintain a minimal standard of living." *In re Andresen,* 232 B.R. 127, 139 (B.A.P. 8th Cir. 1999); *accord Long*, 322 F.3d at 554-55.

The "totality of the circumstances" is obviously a very broad test, giving the Court considerable flexibility.  As a result, courts in the Eighth Circuit have looked to a number of facts and circumstances to assisting them in making this determination including: (1) total present and future incapacity to pay debts for reasons not within the control of the debtor; (2) whether the debtor has made a good faith effort to negotiate a deferment or forbearance of payment; (3) whether the hardship will be long-term; (4) whether the debtor has made payments

3

on the student loan; (5) whether there is permanent or long-term disability of the debtor; (6) the ability of the debtor to obtain gainful employment in the area of the study; (7) whether the debtor has made a good faith effort to maximize income and minimize expenses; (8) whether the dominant purpose of the bankruptcy petition was to discharge the student loan; and (9) the ratio of student loan debt to total indebtedness. *Vermaas v. Student Loans of North Dakota (In re Vermaas)*, 302 B.R. 650, 656-57 (Bankr. D. Neb. 2003); *Morris v. Univ. of Arkansas*, 277 B.R. 910, 914 (Bankr. W.D. Ark. 2002). Applying the totality of the circumstances test to the instant case, the Court examines the factors relevant to this case separately.

### B. Analysis of the Totality of the Circumstances

#### 1. Past, Present and Reasonably Reliable Future Financial Resources

The first factor the Court must consider is Debtor's past, present and reasonably reliable future financial resources. Here, the Court must determine whether Debtors' dependent children's income should be included in Debtors' financial resources analysis. Debtors argue that their children's income should not be considered for purposes of determining whether the repayment of the student loan debt would constitute undue hardship on Debtors or their dependents. In support of their argument, Debtors cite this Court's holding in *In re Bray*, 332 B.R. 186 (Bankr. W.D. Mo. 2005). Debtors assert that the Court held in *Bray* that the income of the debtor's two stepdaughters should not be included in the analysis of undue hardship because it was a short-term item and not a source of funds for long-term debt repayment. However, the Court agrees with Defendant that *Bray* is distinguishable from this case. First, as Defendant noted, *Bray* dealt with emancipated adult children that did not intend to live in the debtor's home for an extended period of time and with whom debtor had neither a familial nor legal relationship or obligation to support them. Here, these children are unemancipated, natural children of

4

Debtors. The oldest son is 16 and the other is 14. Thus, they will presumably remain in the home for at least 2 and 4 years respectively. Further, it is not unreasonable to assume that Debtors' younger children can and will obtain employment at the appropriate age and that their income can replace any income lost when the older children become emancipated and move out. Additionally, and most critical to the analysis of undue hardship, in *Bray* the Court excluded income attributable to the debtor's children since it determined to exclude their expenses. The Court agrees with Defendant that if it is to exclude an unemancipated child's income from the undue hardship analysis in this case that it must also exclude that child's expenses. However, contrary to the facts in *Bray*, Debtors have presented this Court with no evidence with which to determine which of the household's expenses are attributable to their children that are earning an income and the Court cannot determine from the information presented what Debtors' expenses would be if the income-earning children were not in the household. Therefore, the Court will include the income of the children in its undue hardship analysis.

Mr. Heinrich's present average net monthly income was $2,897.48.[1] Debtors also testified that they have received a tax refund the last four years and the average of those refunds per month is $377.42.[2] Debtors also receive monthly Social Security payments for their 7-year-old son's disability. The document submitted shows a $637.00 monthly social security payment[3] but Mrs. Heinrich testified that for the three months of the year that her husband has an additional pay period that payment is reduced to only $101.80. Taking that into account, the average monthly income received from Social Security is $503.20. Additionally, based on the

---

[1] Debtors' Ex. 6.

[2] Debtors' Exs. 2-5.

[3] Debtors' Ex. 7.

5

above discussion, the Court will include the employment income of Debtors' working children. Testimony indicated that the oldest son earns $7.15 per hour and works an average of 30 hours per week as a lifeguard for the city of Columbia, Missouri. This results in income of $929.50 per month. Mrs. Heinrich testified that this son recently had some issues with drugs and that counseling would be required but that it would be covered by their health insurance. There was no evidence presented that this would interfere with his ability to continue his part-time employment and earn an income. The 14-year-old earns an income delivering papers and earns approximately $69.16 per month. The total amount earned by both children totals $998.66. This amount combined with the other income the Debtors receive totals $4,776.76 per month.

Debtors' past economic resources appear to have been stable. Mr. Heinrich has been in his position at the University of Missouri for five years and has received raises although he did testify that he is at the top of his pay scale so will likely receive no further raises. Their tax returns for the years 2004-2007 indicate an adjusted gross income of $30,901, $33,924, $40,193 and $41,220, respectively.[4] Thus, there is evidence that Mr. Heinrich has been able to earn a significant income and receive regular salary increases without incident. Prior to his current employment, Mr. Heinrich testified that he worked as a bus driver, in trade maintenance and in construction.

With regard to Debtors' future ability to earn income, there was no evidence presented that Mr. Heinrich cannot continue to work. Debtors testified that neither of them has a disability that would prevent them from working. Mrs. Heinrich testified that she has some college and is a stay-at-home mom. She home schools her children, the youngest of which is four. However,

---

[4] Debtors' Exs. 2-5.

6

there is no reason that she could not get a job outside the home when the youngest child is no longer home schooled and she in fact testified that she intends to enter the workforce full-time in the future. Also, as discussed above, the younger children will likely obtain employment and earn an income once they reach employment age as Debtors' two oldest sons currently do. That income can also be included in the household's income in the future.

## 2. Reasonable Necessary Living Expenses

The second factor the Court must look at is Debtors' reasonable living expenses. Debtors live quite modestly. Debtor's average monthly living expenses as evidenced by their Schedule J and testimony at trial are $3,481[5]. Defendant did not take issue with any of Debtors' specific monthly expenses other than to point out that Mrs. Heinrich admitted at trial that the expenses should be reduced by at least $200 per month to represent a "minimal standard." However, based on the evidence, the Court finds that Debtors are living minimally for a family of eight, with very little money allotted to recreation. Mrs. Heinrich testified that they do get some state assistance for food but that that will not be available after November 2009. The testimony showed that they drive 1996 and 1998 vehicles which have 115,000 miles and 150,000 miles, respectively. Mr. Heinrich testified that they do not have any money in savings. Therefore, the Court finds that Debtors' expenses are reasonable and do not exceed a minimal standard of living.

As noted above, Debtors did not introduce any evidence relating to what portion of the expenses are attributable to their working children. As it is Debtors burden to prove by a

---

[5] Mortgage $805; property tax $125; $food $900; utilities $212; water & sewer $30; phone/cable/internet $120 (there was some discrepancy in the testimony and the schedules regarding this expense so the Court will include this amount as testified to at trial); home maintenance $100; clothing $150; laundry/dry cleaning $20; medical/dental $150; transportation $300; recreation $100; insurance $209; Other (personal care/household goods/school expenses) $260= $3,481

preponderance of the evidence that it would be an undue hardship to repay the student loan, it is their burden to supply the Court with the evidence regarding expenses. In *Bray*, the Court had information in the record from which it could make a reasonable judgment as to the expenses that would be attributable to the children. Since Debtors in this case have failed to provide any such information or evidence, the Court will not speculate as to what expenses may or may not be attributable to those children and thus excluded from the analysis[6].

Based on the evidence regarding income, which includes the income of the working children as discussed above, and the reasonable expenses presented to the Court, Debtors have a monthly surplus of $1,295.76. Mr. Heinrich testified that the student loan account statement received in January 2008 indicated that the monthly payment on the loan would be $501.38 but that may be an "interest only" payment. Mrs. Heinrich testified that she calculated the monthly payment to be $800 based on a standard amortization schedule at 5% interest.

### 3. Other Relevant Facts and Unique Circumstances

As to the third factor the Court must evaluate, Debtors have not presented evidence of unique facts or circumstances that the Court believes will cause an undue hardship for Debtors to repay the student loan. Debtors testified that they did not have any disabilities that would prevent them from working and that their son's disability would not prevent them from working. They are both only in their late 30's and have decades of earning capacity remaining. Debtors have taken the necessary steps in the past to obtain deferment or forbearance of their loan but they have failed to make any payments on the loan. As noted, Mr. Heinrich has continually received income raises in his current job. Although he has testified that he will not likely receive

---

[6]The Court does note that the analysis provided by Defendant in its post-trial brief demonstrates that were the Court to speculate on certain expenses attributable to the two working children and exclude such expenses and the children's income, there would still be enough monthly surplus to cover the student loan payment.

further raises, he also conceded that he has not looked for a job that pays more in over five years. Further, Mrs. Heinrich intends to obtain full-time employment at some time in the future. Debtors therefore have the opportunity to further maximize their incomes in the future. There was no evidence presented that Debtors filed bankruptcy solely to discharge their student loan and Defendant makes no such claim.

Based on the Court's evaluation of all of the evidence presented in conjunction with the totality of the circumstances, the Court finds that Debtors' reasonably foreseeable financial prospects include the ability to earn a salary similar to, if not more than, the salaries that Mr. Heinrich has earned in the past and the fact that Mrs. Heinrich, at some point in time, will be able to contribute to the monthly income as well. Currently two of Debtors' children earn a monthly income that can be contributed to the household and as the older children leave the home, the younger children will likely obtain employment that will allow them to contribute income to the monthly household income as well, and the household expenses will also decrease as the children leave the home. The Court concludes that it will not be an undue hardship on Debtors to pay the remaining amount owed on their student loan debt.

For all of the above reasons, the Court finds that the indebtedness owed by debtors Steven and Beth Heinrich to defendant National Education Loan Network, Inc. is not dischargeable pursuant to 11 U.S.C. § 523(a)(8).

A separate Order will be entered in accordance with Bankruptcy Rule 9021.


Dated: March 5, 2009                    /s/ Dennis R. Dow
                                        THE HONORABLE DENNIS R. DOW
                                        UNITED STATES BANKRUPTCY JUDGE

Copies to:

J. Brian Baehr
Yvonne M. Warlen
Kyle Seedorf

10